## SIMONS v. VERO BEACH LAUNDRY, et al.

Industrial Commission.

September 18, 1953.

George Heath of Mitchell, Smith & Mitchell, Vero Beach, for claimant.

Culver Smith of Earnest, Lewis, Smith & Jones, West Palm Beach, for the employer and Iowa National Mutual Ins. Co.

L. A. O'Laughlin of Fee, Parker & Sample, Fort Pierce, for the employer and Mechanics & Traders Ins. Co.

JAMES R. KNOTT, Deputy Commissioner.

On November 28, 1951 claimant Mabel Simons sustained an injury arising out of and in the course of her employment as a seamstress with Vero Beach Laundry when she struck her left shin against a basket of laundry. An ulcerated condition developed at the site of the injury which progressed into infectious eczematous dermatitis, acute at first, then chronic. She was furnished with medical attention by Iowa National Mutual Ins. Co., then the insurance carrier for her employer, and was paid compensation for temporary disability which subsequently resulted from the injury from March 1952 until May 31, 1952.

On or about October 28, 1952 she again injured her left shin at the same site, in the course of her work for the same employer, when a chair broke and caused her to strike her shin against a sewing machine. She continued to work through November 1st, 1952, although her leg began to swell and to become increasingly painful; on November 8, 1952 she became hospitalized for a period of 16 days and was again hospitalized for about 7 weeks in January and February, 1953. She has been temporarily totally disabled since November 1, 1952. At the time of her injury of October 28, 1952 her employer carried workmen's compensation insurance with Mechanics & Traders Ins. Co.

Each of the two insurance carriers deny liability for medical and compensation benefits incident to disability following the second injury—the insurance carrier at the time of the first injury contends that claimant's disability following her second injury is unassociated with her first injury, and the carrier at the time of the second injury contends that disability following the second injury was and is entirely due to the first injury.

At the time of her second injury claimant was wearing a bandage on her leg at the site of the original injury where she had an open, draining sore. She was working regularly, although she used crutches. She had improved but little since returning to work about May 31, 1952. At the present time she uses crutches, but does not wear a bandage. According to her testimony she is in better condition now than at the time of her second injury, although her attending physician has not released her for work because of the possibility of aggravating her condition.

Dr. J. C. Robertson, her attending physician, last examined her in July 1952 prior to the second injury, at which time she was still required to wear leg bandages at intermittent periods. He testified that in his opinion her condition following the second injury would have existed regardless of the occurrence of her second accident; that the necessity for her hospitalization after the second accident was probably due in large part to a penicillin injection about 15 days before the second injury, which had a delayed reaction; that her condition following the second injury was a "manifestation" of the first injury. Paradoxically, he further testified that had the first injury not occurred, the second injury might have caused the same results as were caused by the first injury.

The question presented for decision relates to which of the two insurance carriers is liable for benefits incident to claimant's condition following her second injury—or whether liability should be apportioned between them.

Larson on Workmen's Compensation Law, section 95.12, states as follows—

> The Massachusetts and Michigan rule in successive-injury cases is to place full liability upon the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability.

> If the second injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second. In this class would fall most of the cases discussed in the section on range of consequences in which a second injury occurred as the direct result of the first, as when claimant falls because of crutches which his first injury requires him to use. This group also includes the kind of case in which a man has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion.

> On the other hand, if the second incident contributes independently to the injury, the second insurer is solely liable, even if the injury would have been much less severe in the absence of the prior condition,

and even if the prior injury contributed the major part to the final condition. This is consistent with the general principle of the compensability of the aggravation of a pre-existing condition.

In section 95.31 of the same text, it is stated as follows—

The harshness of the Massachusetts-Michigan rule requiring that a single insurer assume the entire cost of any single injury has been tempered in some jurisdictions by a rule permitting apportionment between two carriers when two successive incidents combine to produce the final disability. The leading case establishing this practice is the Anderson case, decided by the New York Court of Appeals in 1931. Claimant had fractured his hip in 1926. In 1927 he went back to work, his medical report showing a good union of the fragments. Later in 1927, when he was working for a different employer with a different carrier, he felt something crack in his hip while he was helping four or five other men lift a timber weighing about a thousand pounds. The fragments had evidently not united as well as had been thought, and had separated under the strain. The court said:

On the evidence the present disability exists by reason of the two accidents and the compensation should be equally apportioned between the two insurers. Unjust it is that the second insurer should bear the entire liability when the second accident was related in large measure to the first. No less unjust it is that the first insurer should bear the entire liability if it appears that without the second accident an earlier recovery might have been had.

The weight of the evidence shows that the claimant's two successive accidents combined to produce her disability following the second injury. Justice, therefore, requires that liability therefor should be apportioned between the two carriers.

Upon consideration, it is hereby ordered as follows—

1. Iowa National Mutual Ins. Co., as insurance carrier for the employer, shall pay to the claimant compensation at the rate of $16.20 per week for her temporary total disability beginning November 2, 1952, such payments to be brought to a current basis and to continue until modified or terminated in accordance with law.

2. Iowa National Mutual Ins. Co. shall pay the medical and hospitalization expense incident to the claimant's disability since the occurrence of her injury of October 28, 1952, and shall furnish such further medical and other remedial treatment as the nature of her said injuries may require.

3. Upon payment of the benefits hereinabove directed to be furnished and paid by Iowa National Mutual Ins. Co. to the date hereof, Mechanics & Traders Ins. Co. shall be furnished with an accounting thereof, and thereupon shall pay to Iowa National Mutual Ins. Co. in reimbursement, an amount equal to one-half of the cost of such benefits. Thereafter, at three-month intervals, or

at such intervals as may be mutually agreed upon between the two insurance carriers, Iowa National Mutual Ins. Co. shall render a supplemental accounting to Mechanics & Traders Ins. Co. and shall thereupon be reimbursed to the extent of one-half of the total cost and expense of compensation and medical benefits which shall have been furnished to the claimant by Iowa National Mutual Ins. Co. during such interval.

4. Iowa National Mutual Ins. Co. shall pay to Mitchell, Smith & Mitchell, Esqs., the sum of $375 for their legal services in the claimant's behalf, and shall be reimbursed to the extent of one-half of said amount by Mechanics & Traders Ins. Co.